IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:21-CV-00371-BO

SONYA CALLOWAY-DURHAM,

     Plaintiff,

v.

N.C. DEPARTMENT OF JUSTICE,
JOSHUA H. STEIN, in his individual
and official capacity as Attorney
General, LESLIE COOLEY
DISMUKES, in her individual and
official capacity as Criminal Bureau
Chief, SHANNON CASSELL, in her
individual and official capacity as former
Civil Bureau Chief, and ALANA
DANIELLE MARQUIS ELDER, in her
individual and official capacity as Senior
Deputy Attorney General,

     Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS AND ALTERNATIVE MOTION TO STRIKE**

## INDEX

TABLE OF AUTHORITIES.................................................................iv

INTRODUCTION...........................................................................1

NATURE OF THE CASE .................................................................3

STATEMENT OF FACTS .................................................................5

    A. The Parties .........................................................................5

    B. Plaintiff's Employment With NCDOJ.........................................6

    C. Plaintiff Applied For a Promotion in the Public Safety Section in 2020.....6

    D. Plaintiff's Grievance Filing and Post-Promotion Allegations....................7

        1. Plaintiff's Grievance and Hearing Allegations .......................7

        2. Plaintiff's Allegations About Her Work Conditions ..............8

    E. Plaintiff Filed an EEOC Charge ...............................................10

ARGUMENT ...............................................................................10

I.    PLAINTIFF FAILS TO STATE A SECTION 1983 CLAIM AGAINST DEFENDANTS STEIN AND CASSELL FOR HER NON-PROMOTION .....11

II.   PLAINTIFF'S "OFFICIAL CAPACITY" CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS ARE REDUNDANT OF THE CLAIMS AGAINST NCDOJ ...........................................................................11

III.  PLAINTIFF FAILS TO ALLEGE FACTS SUFFICIENT TO STATE A SECTION 1983 RETALIATION CLAIM ........................................14

    A. Plaintiff's Attempted Claim For Violation of the Equal Protection Clause Does Not State a Cognizable Claim ...........................................14

    B. Plaintiff Does Not Allege Facts Sufficient To Allege First Amendment Retaliation...................................................................15

    C. Plaintiff's Attempted Claim Against Stein Fails For Lack of Any Alleged Conduct By Him...............................................................17

ii

IV.    PLAINTIFF FAILS TO STATE A TITLE VII RETALIATION CLAIM ......... 18

    A.  Plaintiff Fails to Allege an Adverse Employment Action .......................... 18

    B.  Plaintiff Failed to Exhaust Administrative Remedies .............................. 21

V.    PLAINTIFF FAILS TO STATE A CLAIM FOR HOSTILE WORK
    ENVIRONMENT ......................................................................... 23

VI.    PLAINTIFF FAILS TO STATE A CLAIM FOR AGE DISCRIMINATION ... 25

CONCLUSION .......................................................................................... 26

CERTIFICATE OF SERVICE ..................................................................... 28

iii

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. City of Greensboro,*
762 F. Supp. 2d 764 (M.D.N.C. 2011) .................................................. 23

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........................................................................ 10, 11

*Austin v. Paramount Parks, Inc.,*
195 F.3d 715 (4th Cir. 1999) .................................................................. 11

*Bass v. E.I. DuPont de Nemours & Co.,*
324 F.3d 761 (4th Cir. 2003) ......................................................... 23, 24, 25

*Beardsley v. Webb,*
30 F.3d 524 (4th Cir. 1994) ................................................................... 23

*Bess v. Cty. Of Cumberland,*
2012 U.S. Dist. LEXIS 152112 (E.D.N.C. Oct. 23, 2012) ...................... 20

*Bonds v. Leavitt,*
629 F.3d 369 (4th Cir. 2011) ................................................................. 26

*Brooks v. Arthur,*
685 F.3d 367 (4th Cir. 2012) ............................................................ 15, 16

*Brown v. Bratton,*
2020 U.S. Dist. LEXIS 30625, (D. Md. Feb. 21, 2020) ......................... 16

*Buckner v. Lew,*
2014 U.S. Dist. LEXIS 36798 (E.D.N.C. Mar. 20, 2014) ...................... 24

*Burlington Indus., Inc. v. Ellerth,*
524 U.S. 742 (1998) ............................................................................ 18

*Burlington N. & Sante Fe Ry v. White,*
548 U.S. 53 (2006) ......................................................................... 18, 19

*Buxton v. Kurtinitis,*
862 F.3d 423 (4th Cir. 2017) ................................................................. 15

*Connick v. Myers,*
461 U.S. 138 (1983) ........................................................................ 15, 17

iv

*Constantine v. Rectors & Visitors of George Mason Univ.*,
    411 F.3d 474 (4th Cir. 2005)..................................................................... 15

*Coppage v. City of Raleigh*,
    2021 U.S. Dist. LEXIS 64775 (E.D.N.C. Apr. 1, 2021)................................... 24, 25

*Dewitt v. Mecklenburg Cty.*,
    73 F. Supp. 2d 589 (W.D.N.C. June 22, 1999) ......................................... 16

*Drennon-Gala v. Univ. of N.C.*,
    1998 U.S. Dist. LEXIS 15393, (E.D.N.C. July 1, 1998)........................... 17

*Evans v. Chalmers*,
    703 F.3d 636 (4th Cir. 2012)..................................................................... 12

*Fauconier v. Clarke*,
    966 F.3d 265 (4th Cir. 2020)..................................................................... 11

*Flanigan v. Fayetteville State Univ.*,
    2016 U.S. Dist. LEXIS 6015 (E.D.N.C. Jan. 19, 2016)................................... 20, 25

*Galman v. Sysco Food Servs. Of Metro N.Y. LLC*,
    674 Fed. Appx. 211 (3rd Cir. 2016) ......................................................... 20

*Huang v. Bd. Of Governors of Univ. of N.C.*,
    902 F.2d 1134 (4th Cir. 1990)................................................................... 16

*James v. Booz-Allen & Hamilton, Inc.*,
    368 F.3d 371 (4th Cir. 2004)................................................................ 19, 20

*Kentucky v. Graham*,
    473 U.S. 159 (1985)................................................................................. 13

*Khazanie v. Univ. of N.C. at Chapel Hill*,
    2021 U.S. Dist. LEXIS 217431, (M.D.N.C. Nov. 10, 2021)................................... 13

*Kirby v. City of Elizabeth City*,
    388 F.3d 440 (4th Cir. 2004)................................................................ 15, 16

*Love-Lane v. Martin*,
    355 F.3d 766 (4th Cir. 2004)..................................................................... 13

v

*Perkins v. Int'l Paper Co.,*
    936 F.3d. 196 (4th Cir. 2019).....................................................................24

*Sanders v. Bernhardt,*
    2020 U.S. Dist. LEXIS 201557, (E.D. Va. Oct. 28, 2020) .......................19

*Schamann v. O'Keefe,*
    314 F. Supp. 2d 515 (D. Md. 2004).............................................................20

*Sharrock v. Fayetteville Metro. Hous. Auth.,*
    2015 U.S. Dist. LEXIS 141877, (E.D.N.C. Oct. 19, 2015) .......................13

*Simmons v. United Mortg. & Loan Inv., LLC,*
    634 F.3d 754 (4th Cir. 2011)........................................................................10

*Smith v. First Union Nat'l Bank,*
    202 F.3d 234 (4th Cir. 2000)........................................................................21

*Smith v. Va. Hous. Dev. Auth.,*
    437 F. Supp. 3d 486 (E.D. Va. 2020) ..........................................................20

*Spriggs v. Diamond Auto Glass,*
    242 F.3d 179 (4th Cir. 2001)........................................................................24

*Stroman v. Colleton Cty. Sch. Dist.,*
    981 F.2d 152 (4th Cir. 1992)........................................................................16

*Taylor v. Cty. Of Pulaski,*
    2008 U.S. Dist. LEXIS 79228, (W.D. Va. Oct. 8, 2008) ..........................16

*Triplett v. N.C. Dept. of Public Safety,*
    2017 U.S. Dist. LEXIS 4086 (W.D.N.C. Jan. 10, 2017)...........................21

*U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency,*
    745 F.3d 131 (4th Cir. 2014)........................................................................10

*Webster v. Chesterfield Cty. Sch. Bd.,*
    2020 U.S. Dist. LEXIS 190722 (E.D. Va. Oct. 14, 2020) .......................11

*West v. Atkins,*
    799 F.2d 923 (4th Cir.  1983)......................................................................12

*Wilcox v. Lyons,*
    970 F.3d 452 (4th Cir. 2020).................................................................14, 18

vi

*Wright v. Collins,*
   766 F.2d 841 (4th Cir. 1985) ...................................................................... 11

## Statutes and Other Authorities

Fed. R. Civ. P. 12(b)(6) ......................................................................*passim*

Fed. R. Civ. P. 12(f) ................................................................................ 5, 26

42 U.S.C.§ 1983 ...................................................................................... 4,11

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:21-CV-00371-BO

| | |
|---|---|
| SONYA CALLOWAY-DURHAM,<br><br>      Plaintiff,<br><br>v.<br><br>N.C. DEPARTMENT OF JUSTICE,<br>JOSHUA H. STEIN, in his individual<br>and official capacity as Attorney<br>General, LESLIE COOLEY<br>DISMUKES, in her individual and<br>official capacity as Criminal Bureau<br>Chief, SHANNON CASSELL, in her<br>individual and official capacity as former<br>Civil Bureau Chief, and ALANA<br>DANIELLE MARQUIS ELDER, in her<br>individual and official capacity as Senior<br>Deputy Attorney General,<br><br>      Defendants. | **DEFENDANTS' MEMORANDUM<br>OF LAW IN SUPPORT OF THEIR<br>MOTION TO DISMISS AND<br>ALTERNATIVE MOTION TO<br>STRIKE** |

Pursuant to Local Civil Rule 7.1(e), defendants North Carolina Department of Justice ("NCDOJ"), Joshua H. Stein, Leslie Cooley Dismukes, Shannon Cassell, and Alana Danielle Marquis Elder, by and through their undersigned counsel, submit this memorandum of law in support of their motion to dismiss and alternative motion to strike pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure.

## **INTRODUCTION**

In 2020, the section head of the NCDOJ Public Safety Section, Ms. Hill (a black female), accepted a leadership role at the North Carolina Department of Public Safety. Plaintiff (also a black female) applied to become the next Public Safety

Section head following Ms. Hill's departure. Defendants Elder and Dismukes, both women in management roles above the section head position, made the hiring decision. In addition to performing interviews of applicants, they asked Ms. Hill whom she would recommend. Elder and Dismukes did not offer the job to Plaintiff. They selected the same applicant that Ms. Hill had recommended: a white male who is the same age as Plaintiff. Plaintiff complains that she was not offered the job because of her race, sex, and age. Plaintiff's discrimination claims, however, fail in multiple ways. For instance, Plaintiff fails to allege any involvement in the promotion decision whatsoever by two individual defendants, Stein and Cassell. Further, Plaintiff attempts to assert Title VII claims against the individual defendants, contrary to well-established law prohibiting such claims.

In addition, Plaintiff asserts that, after she challenged her non-promotion as discriminatory, she was subjected to retaliation and a hostile work environment. In depicting the environment at NCDOJ, Plaintiff generally describes many significant events and changes in recent years. Plaintiff alleges that NCDOJ experienced a budget cut of $10 million in July 2017. Plaintiff describes the ensuing large-scale restructuring of the divisions within NCDOJ, which involved multiple job realignments affecting multiple people, among other department-wide changes. Plaintiff's Complaint also describes that personnel who were new to NCDOJ, including some of the named defendants, assumed supervisory roles over career state employees, including Plaintiff. Plaintiff broadly alleges that many of the structural and policy changes were disliked and were stressful for other employees. Plaintiff

2

alleges that multiple colleagues–male and female, white and black–experienced health difficulties which Plaintiff alleges arose from working at NCDOJ.

Plaintiff, however, does not allege facts that, even if true, would tend to show that she was harassed or subjected to work conditions that rendered the environment abusive, or that she experienced any adverse employment action after complaining that her non-promotion was discriminatory. Instead, Plaintiff alleges the types of ordinary aggravations of employees in many workplaces: annoyances such as increased supervision, lack of unfettered authority, critical performance evaluations, and unpleasant work assignments. In this regard, Plaintiff fails to allege conduct sufficient to give rise to a claim. Further, apart from their factual deficiencies, Plaintiff's putative retaliation and hostile work environment claims disregard well-established legal principles, including that: the law does not support an equal protection claim in this context; employee grievances do not fall with the protection of the First Amendment; and a plaintiff must exhaust her administrative remedies before bringing a Title VII retaliation or hostile work environment claim. Plaintiff's attempted retaliation and hostile work environment claims fail as a matter of law and should be dismissed.

## NATURE OF THE CASE

Plaintiff Sonya Calloway-Durham brought this lawsuit against her employer, the North Carolina Department of Justice ("NCDOJ") and certain NCDOJ attorneys: Leslie Cooley Dismukes, Alana Danielle Marquis Elder, Shannon Cassell, and Joshua H. Stein. Plaintiff generally alleges that she applied for a promotion, that she was

3

qualified for the promotion, and that the position instead was given to a white male less qualified than Plaintiff because of their respective race, color, and gender. Plaintiff further asserts that she was subjected to unlawful retaliation and a hostile work environment because, after the promotion decision, she submitted an internal grievance and filed a charge with the Equal Employment Opportunity Commission ("EEOC") in which she claimed discrimination.

Plaintiff filed her Complaint on 15 September 2021. The Complaint purports to assert four claims for relief. Counts One and Two focus on Plaintiff's non-promotion; Counts Three and Four focus on claimed retaliation and hostile work environment. Specifically:

Count One, asserted against all individual defendants in their individual capacities, is made pursuant to 42 U.S.C. § 1983 for failing to promote Plaintiff in violation of her constitutional right to equal protection.

Count Two, asserted against NCDOJ and all individual defendants in their official capacities, is a claim for violation of Title VII of the Civil Rights Act of 1964 for not promoting Plaintiff due to her race, color, and gender.

Count Three, asserted against all individual defendants in their individual capacities, is a claim for violation of 42 U.S.C. § 1983 for retaliating against Plaintiff and subjecting her to a hostile work environment in violation of her constitutional right to equal protection.

Count Four, asserted against NCDOJ and all individual defendants in their official capacities, is a claim for violation of Title VII of the Civil Rights Act of 1964

for retaliating against Plaintiff and subjecting her to a hostile work environment in response to her grievance of sex, race, and color discrimination.

The Court extended Defendants' time to respond to the Complaint. Defendants now move to dismiss pursuant to Rule 12(b)(6) and, alternatively, to strike certain allegations pursuant to Rule 12(f).

## STATEMENT OF ALLEGED FACTS[1]

A.   The Parties

Plaintiff is an African-American female born in 1968.  (DE-1, Compl. ¶ 16)  She graduated from law school in May 1995, and passed the North Carolina bar exam in July 1995.  (*Id.* ¶ 17)  Plaintiff worked in private practice for over six years.  (*Id.* ¶ 18)  Since 2002, she has been employed as an attorney for NCDOJ.  (*Id.* ¶ 16)

Defendant Stein is the elected Attorney General for the State of North Carolina with supervisory responsibility for NCDOJ.  (*Id.* ¶ 5)  He is a white male. (*Id.*)

Defendant Dismukes is the Criminal Bureau Chief of NCDOJ.  (*Id.* ¶ 6)  She is a white female.  (*Id.*)

Defendant Elder is head of the NCDOJ's Criminal Division and she supervises the head of the Public Safety Section.  (*Id.* ¶ 8)  She is a white female.  (*Id.*)

Defendant Cassell is the former Special Counsel to the Chief Deputy Attorney General and the former Civil Bureau Chief of NCDOJ.  (*Id.* ¶ 7)  She is a white female. (*Id.*)

---

[1]Defendants recognize that, at this procedural posture, the legal evaluation of Plaintiff's claims must be based on the particularized allegations made, whether or not they are true.  Many of Plaintiff's central allegations ultimately will be shown to be incorrect, contrary to actual events, and without factual basis.

5

B.     Plaintiff's Employment With NCDOJ

Plaintiff has worked in several departments within the NCDOJ.  She initially was hired to litigate disputes in the Labor Section of the NCDOJ's Civil Division.  (*Id.* ¶¶ 20-21).  In December 2011, Plaintiff was promoted to Special Deputy Attorney General in the Capital Litigation and Habeas Corpus section of the NCDOJ's Criminal Division.  (*Id.* ¶ 22).  In April 2018, Plaintiff joined NCDOJ's Public Safety Section in the Criminal Division and began handling satellite-based monitoring (SBM) matters and disputes involving the Parole Commission.  (*Id.* ¶ 47)

Stein, Dismukes, and Elder had supervisory authority over Plaintiff at all relevant times.  (*Id.* ¶ 9)  Cassell did not have direct supervisory authority over Plaintiff; she held "positions superior to Plaintiff that allowed her to dictate legal decisions in all matters civil."  (*Id.*)

C.     Plaintiff Applied For a Promotion in the Public Safety Section in 2020.

In May 2020, the section head of NCDOJ's Public Safety Section, Tammera Hill, provided notice that she would be leaving the position to work directly for the North Carolina Department of Public Safety.  (*Id.* ¶¶ 56, 66)  Plaintiff applied for the position vacated by Ms. Hill in June 2020.  (*Id.* ¶ 67)

Elder and Dismukes were the "decision makers in the promotion decision."  (*Id.* ¶ 80)  Together with a representative from Human Resources, Elder and Dismukes interviewed applicants.  (*Id.* ¶ 111)  They also asked Ms. Hill if there was anyone that she would recommend for the role.  (*Id.* ¶ 83)  Ms. Hill recommended James Trachtman.  (*Id.*)  Mr. Trachtman applied and interviewed for the position.  (*See id.*

6

¶ 115)  Elder and Dismukes decided to offer Mr. Trachtman the promotion, and he accepted.  (*Id.* ¶¶ 68-69)

Mr. Trachtman is a white male.  (*Id.* ¶¶ 69, 141)  Mr. Trachtman has practiced law for the same number of years as Plaintiff.  (*Id.* ¶ 69)  He joined NCDOJ in August 2019; Plaintiff alleges that his previous legal experience was in civil matters involving corporate law.  (*Id.*)

Plaintiff alleges that she is more qualified than Mr. Trachtman to serve as head of the NCDOJ Public Safety Section.  At the time of her application, Mr. Trachtman was classified as an Attorney III, and Plaintiff was classified as an Attorney IV.  (*Id.* ¶ 70)  Plaintiff asserts that she had extensive experience in both civil litigation and criminal litigation (*id.* ¶¶ 72-73), and alleges that dual experience "was particularly valuable to the position for which she applied, because the statutory responsibilities of the [Department of Public Safety] involved obligations imposed by both civil and criminal law" (*id.* ¶ 76).  Plaintiff alleges that she was more qualified for the position and "had broader and more extensive knowledge and experience than anyone else in the Office of the Attorney General with regard to the [Department of Public Safety]."  (*Id.* ¶ 78)  She asserts that she would have been promoted but for the combination of race, color, and gender.  (*Id.* ¶ 79)

D.    Plaintiff's Grievance Filing and Post-Promotion Allegations

1.    *Plaintiff's Grievance and Hearing Allegations*

On 29 June 2020, Plaintiff filed an internal grievance asserting that her non-promotion was the result of sex, race, and color discrimination.  (*Id.* ¶¶ 81, 156)

7

The hearing on Plaintiff's internal grievance took place on 26 October 2020. (*Id.* ¶ 109) Elder, Dismukes, and Cassell appeared as witnesses. Plaintiff generally alleges that each testified that Plaintiff's work is not as good as Mr. Trachtman's work. Elder testified that Plaintiff does not handle complex matters of same type as other attorneys, is not as qualified as Mr. Trachtman, and is a poor writer. (*Id.* ¶¶ 113, 116) Elder also testified that Ms. Hill and Mr. Trachtman do "stellar work" but that Plaintiff's work was "only 'good.'" (*Id.* ¶ 117) Plaintiff alleges that Elder testified that, compared to Mr. Trachtman, Plaintiff did not offer suggestions for improving the department and responded poorly to interview questions about how she manages clients. (*Id.* ¶ 114) Dismukes and Cassell each testified at the hearing that their experience was that Plaintiff is not capable of handling complex cases. (*Id.* ¶¶ 113, 121) Plaintiff alleges that the witnesses' testimony included other negative statements about Plaintiff's work performance and abilities, including that Cassell allegedly testified that "Plaintiff was a prime example of lazy career employees who think they simply have to show up for work." (*Id.* ¶ 120)

### 2. *Plaintiff's Allegations About Her Work Conditions*

Plaintiff alleges that after her grievance filing "management engaged in a campaign to sabotage her successes and undermine her representation of her client." (*Id.* ¶ 84) She received only "one direct appeal involving first-degree murder between her filing of her grievance" and the filing of this lawsuit. (*Id.* ¶ 85) Elder, Dismukes, and Cassell allegedly "refused to allow Plaintiff to have the assistance of a transcriptionist for SBM cases," which forced her to work longer hours and incur out-

8

of-pocket expense for a transcriptionist. (*Id.* ¶¶ 86-87) Plaintiff also observed that "Defendant Elder began disallowing Plaintiff to petition for discretionary review" in Plaintiff's SBM cases unless Plaintiff was in a position to "piggy back" on appeals assigned to another NCDOJ attorney. (*Id.* ¶¶ 90, 93)

Plaintiff alleges that these efforts to "sabotage" her also occurred with her work defending habeas corpus petitions. In July 2020, according to Plaintiff, defendant Dismukes "insisted on" accompanying Plaintiff to a court hearing in Durham, during which Dismukes "spoke over Plaintiff, the [c]ourt, and opposing counsel." (*Id.* ¶ 94) In August 2020, Defendants Elder and Dismukes "rewrote" Plaintiff's draft response to a habeas petition. (*Id.* ¶ 95) In August 2020, defendants Dismukes and Elder informed Plaintiff that she was not allowed to petition for writ of certiorari in a particular habeas case and, thereafter, Dismukes "forbade Plaintiff to handle any additional state habeas cases." (*Id.* ¶¶ 99, 106) At that time, defendant Cassell "forbade anyone involved as a party in the companion cases to Plaintiff's high-profile OSHA matters" to speak with Plaintiff, which resulted in Plaintiff having "to do her own investigation and find [her own] witnesses and documents." (*Id.* ¶ 107) Plaintiff also "began to notice" that she was not recognized in NCDOJ newsletters while other employees "were praised, congratulated, and recognized for their successes." (*Id.* ¶¶ 108, 128)

In August 2021, Plaintiff received her 2020-21 annual performance review, which was signed by Elder and Mr. Trachtman. (*Id.* ¶ 129) Plaintiff "received a total score of 2.6 which equated to a 2 for having met expectations" on a scale where "a

total score of 2.7 would equate to a 3 for having exceeded expectations, [which is] the highest allowed, and [meets] the requirement for merit-based pay of bonuses." (*Id.*) Plaintiff believes that defendant Elder refused to allow Mr. Trachtman to change his original evaluation score to a higher score, which Plaintiff alleges would have allowed her to qualify for merit-based pay. (*Id.* ¶ 131)

E. Plaintiff Filed an EEOC Charge.

Plaintiff filed an EEOC charge of discrimination on 20 October 2020 alleging discrimination in the June 2020 promotion decision due to Plaintiff's race, color, and gender. (Exhibit A (Plaintiff's EEOC Charge)) On 17 June 2021, the EEOC issued Plaintiff a right to sue letter. (*Id.* ¶¶ 12, 156)

## ARGUMENT

On a Rule 12(b)(6) motion, the factual allegations in the Complaint must be taken as true and the "complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must "construe facts in the light most favorable to the plaintiff and draw all reasonable inferences in [her] favor." *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (cleaned up). Although a district court generally does not consider materials other than the complaint under Rule 12(b)(6), it may consider documents

attached to the motion to dismiss, so long as those documents are integral to or explicitly relied upon in the complaint. *Id.; see also Webster v. Chesterfield Cty. Sch. Bd.*, 2020 U.S. Dist. LEXIS 190722, *9-10 (E.D. Va. Oct. 14, 2020) (an EEOC charge referenced in, but not attached to, a complaint can be considered on Rule 12(b)(6)).

## I. PLAINTIFF FAILS TO STATE A SECTION 1983 CLAIM AGAINST DEFENDANTS STEIN AND CASSELL FOR HER NON-PROMOTION.

In Count One, Plaintiff seeks damages under 42 U.S.C. § 1983 against each of the individual defendants on the grounds that they violated her constitutional right to equal protection when she was not promoted. Plaintiff, however, does not allege any conduct or participation by Stein or Cassell in the promotion decision. Her claim against them therefore should be dismissed.

A plaintiff seeking damages under Section 1983 must establish (i) the deprivation of a right secured by the Constitution or laws of the United States, and (ii) that the alleged deprivation was committed under color of state law. *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727 (4th Cir. 1999). Where, as here, a Section 1983 claim is premised on an equal protection violation, the plaintiff must demonstrate "that [s]he has been treated differently from others with whom [she] is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Fauconier v. Clarke*, 966 F.3d 265, 277 (4th Cir. 2020) (cleaned up). Further, a government official cannot be held individually liable under Section 1983 unless the plaintiff "affirmatively show[s] that the official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("[A]

11

plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also West v. Atkins*, 799 F.2d 923, 924 (4th Cir. 1983) (There is no *respondeat superior* liability under Section 1983); *cf. Evans v. Chalmers*, 703 F.3d 636, 660 (4th Cir. 2012) (a "supervisor's mere knowledge that his subordinates are engaged in unconstitutional conduct is insufficient to give rise to liability").

Here, Plaintiff has not alleged that Stein or Cassell acted in any way with regard to the promotion decision. Indeed, the only conduct-based allegation about Stein at all is that he was elected Attorney General. (Compl. ¶ 24) Similarly, Plaintiff does not allege any act by Cassell in the hiring process. Because the Complaint has not alleged any actions by Stein or Cassell with regard to the promotion decision, they cannot be held liable under Section 1983.[2] Accordingly, the Court should dismiss Count One against defendants Stein and Cassell.

---

[2] Indeed, as to Elder and Dismukes, Plaintiff's own allegations tend to reveal the implausibility of her claim that they did not promote her because of her race, color, and sex. In particular, Plaintiff's allegations show that Elder and Dismukes previously had selected Ms. Hill to fill the section head role after "realigning" a white male out of that position. Specifically, Ms. Hill, a black female, was installed as the section head under the supervision of Elder and Dismukes, who led the Criminal Bureau. (Compl. ¶¶ 6-8, 56) Ms. Hill became section head after Mr. Finarelli, a white male, who was realigned to a non-management role against his wishes. (*See id.* ¶¶ 54, 56) Ms. Hill chose to leave the section head role to take a leadership role in the Department of Public Safety. (*Id.* ¶ 66) When consulted, Ms. Hill recommended Mr. Trachtman for the vacant position. (*See id.* ¶ 83) After conducting the hiring process to fill the vacant position, Elder and Dismukes chose to promote Mr. Trachtman. (*See id.* ¶ 80)

12

## II. PLAINTIFF'S "OFFICIAL CAPACITY" CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS ARE REDUNDANT OF THE CLAIMS AGAINST NCDOJ.

In Count Two and Count Four, Plaintiff purports to sue NCDOJ *and* all individual defendants in their "official capacity" for Title VII violations. These "official capacity" claims against the individual defendants are redundant of the claim against the Department and should be dismissed.

"Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (cleaned up). As long as the government entity receives notice, an "official capacity" claim against a government official should "be treated as a suit against the entity," and *not* a suit against the official personally. *Id.* Where, as here, plaintiff asserts a claim against the government entity *and* officials employed by that entity in their official capacity, the "official capacity" claims are duplicative and should be dismissed. *Love-Lane v. Martin,* 355 F.3d 766, 783 (4th Cir. 2004) (affirming judgment dismissing official-capacity claim as duplicative); *Khazanie v. Univ. of N.C. at Chapel Hill,* 2021 U.S. Dist. LEXIS 217431, *10 (M.D.N.C. Nov. 10, 2021) (dismissing official-capacity claims as duplicative); *Sharrock v. Fayetteville Metro. Hous. Auth.*, 2015 U.S. Dist. LEXIS 141877, *5-6 (E.D.N.C. Oct. 19, 2015) (same).

13

The official-capacity claims against the individual defendants in Count Two and Count Four[3] are duplicative of the claims against NCDOJ. Thus, the Court should dismiss the official-capacity claims lodged against the individual defendants in Counts Two and Four pursuant to Rule 12(b)(6).

## III. PLAINTIFF FAILS TO ALLEGE FACTS SUFFICIENT TO STATE A SECTION 1983 RETALIATION CLAIM.

In Count Three, Plaintiff claims that each of the individual defendants is liable under Section 1983 for retaliatory actions in response to her internal grievance and EEOC charge, which she asserts deprived her of her right to equal protection. (Compl. ¶¶ 152-54) Specifically, Plaintiff claims that her "cases were scrutinized, second-guessed, and micro-managed" and that Defendants took away "much of [her] decision making authority." (*Id.* ¶ 153) Even if accepted as true, Plaintiff's allegations fail to state a claim on which relief may be granted for multiple independent reasons.

### A. Plaintiff's Attempted Claim For Violation of the Equal Protection Clause Does Not State A Cognizable Claim.

Plaintiff frames Count Three as a claim seeking a remedy for retaliatory actions that violated her equal protection rights. (Compl. ¶ 155) The Fourteenth Amendment, however, does not confer "an equal protection right to be free from retaliation." *Wilcox v. Lyons*, 970 F.3d 452, 458 (4th Cir. 2020). When, as here, a public employee contends she suffered adverse consequences for expressing complaints or reporting discrimination to her employer, the claim "is not cognizable

---

[3]Count Four should be dismissed in its entirety for the reasons discussed in Sections IV and V.

14

under the Equal Protection Clause," but instead must be brought as one arising under the First Amendment. *Id.* at 462. For this reason alone, Count Three fails to state a claim.

      B.    <u>Plaintiff Does Not Allege Facts Sufficient To Allege First Amendment Retaliation.</u>

Even if the Court construes Count Three to be a claim seeking a remedy for violation of First Amendment protections, it still fails and should be dismissed.

"A plaintiff seeking to recover for First Amendment retaliation must allege that (1) she engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected her First Amendment rights, and (3) there was a causal relationship between her protected activity and the defendants' conduct." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005). Here Plaintiff does not allege facts sufficient to satisfy the first element—that she engaged in protected First Amendment activity—because her speech concerned her own employment, not a matter of public concern.

"The inquiry into the protected status of speech is one of law, not fact." *Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983). In the context of public employment, speech is protected only when plaintiff's statements are made "as a citizen speaking upon a matter of public concern and not as an employee about a matter of personal interest." *Buxton v. Kurtinitis*, 862 F.3d 423, 427 (4th Cir. 2017) (quoting *Adams v. Trs. of the Univ. of N.C.- Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011)); *Brooks v. Arthur*, 685 F.3d 367, 371 (4th Cir. 2012). "Speech involves a matter of public concern when it involves an issue of social, political, or other interest to a community." *Kirby v. City*

15

*of Elizabeth City*, 388 F.3d 440, 446 (4th Cir. 2004). On the other hand, "[p]ersonal grievances, complaints about conditions of employment, or expressions about other matters of personal interest do not constitute speech about matters of public concern that are protected by the First Amendment, but are matters more immediately concerned with the self-interest of the speaker as employee." *Stroman v. Colleton Cty. Sch. Dist.*, 981 F.2d 152, 156 (4th Cir. 1992).

In this case, Plaintiff's allegations fall squarely within the defined bounds of self-interested speech that is not protected by the First Amendment. Plaintiff asserts that she suffered retaliation as a result of her internal grievance and EEOC charge regarding her non-promotion. (Compl. ¶¶ 81, 152) But it is well-established that the submission of a grievance regarding a plaintiff's employment through an employer-sponsored program is not a statement addressing a matter of public concern. *See Brooks*, 685 F.3d at 373 (an employee "who seeks primarily resolution of [her] personal situation through an employer-provided grievance process simply does not speak with the civic intent necessary to invoke the First Amendment."); *Huang v. Bd. of Governors of Univ. of N.C.*, 902 F.2d 1134, 1140 (4th Cir. 1990) ("[I]t is settled that a public employee's expression of grievances concerning his own employment is not a matter of public concern."). Similarly, an EEOC charge addressing the employee's personal situation alone is not a statement addressing a matter of public concern, even if it concerns allegations of discrimination. *See Brown v. Bratton*, 2020 U.S. Dist. LEXIS 30625, *60-62 (D. Md. Feb. 21, 2020); *Taylor v. Cty. of Pulaski*, 2008 U.S. Dist. LEXIS 79228, *20-21 (W.D. Va. Oct. 8, 2008); *Dewitt v. Mecklenburg Cty.*, 73 F.

16

Supp. 2d 589, 607 (W.D.N.C. June 22, 1999); *Drennon-Gala v. Univ. of N.C.*, 1998 U.S. Dist. LEXIS 15393, *18-19 (E.D.N.C. July 1, 1998) (citing *Connick*, 461 U.S. at 148 n.8) ("Speech does not become a matter of public concern because its subject matter, in different circumstances, could have been the topic of general interest to the public.").

Because Plaintiff does not allege any conduct that would fall within her capacity as a *citizen* speaking on public matters as opposed to an *employee* addressing "matters of only private interest," *Connick*, 461 U.S. at 147, Plaintiff's Section 1983 retaliation claim fails as a matter of law.

C.   Plaintiff's Attempted Claim Against Stein Fails For Lack of Any Alleged Conduct By Him.

Even if Plaintiff had stated a cognizable claim for retaliation under Section 1983, the claim would still fail against defendant Stein. Plaintiff does not allege any retaliatory action by Stein in response to either her internal grievance or EEOC charge. Thus, even if Plaintiff had stated a cognizable First Amendment retaliation claim (and she has not), the claim against defendant Stein should be dismissed for the same reasons as those discussed in Section I.

In summary, Plaintiff has failed to state a Section 1983 claim for retaliation. As a threshold matter, her claim would arise, if at all, under the First Amendment and not, as she alleges, the Equal Protection Clause. But Plaintiff has not alleged any protected First Amendment activity because her internal grievance and EEOC charge address her own employment situation and were not made in her capacity as

17

a citizen to inform the public of a matter a public interest. Count Three fails to state a claim for relief and should be dismissed in its entirety.

## IV. PLAINTIFF FAILS TO STATE A TITLE VII RETALIATION CLAIM.

Count Four is styled as a Title VII claim for retaliation following Plaintiff's internal grievance and EEOC charge. Plaintiff fails to state a plausible claim for relief because she has not alleged any retaliatory actions that amount to an "adverse employment action." Even if she had alleged conduct that would constitute an "adverse employment action," the claim still would be barred for failure to exhaust administrative remedies.

### A. Plaintiff Fails to Allege an Adverse Employment Action.

To establish a prima facie case of retaliation under Title VII, plaintiff must establish "(i) that she engaged in protected activity, (ii) that her employer took adverse action against her, and (iii) that a causal relationship existed between the protected activity and the adverse employment activity." *Wilcox v. Lyons*, 970 F.3d 452, 457 (4th Cir. 2020). "Petty slights" and "minor annoyances that often take place at work," such as "snubbing by supervisors," are not actionable under Title VII. *Burlington N. & Sante Fe Ry. v. White*, 548 U.S. 53, 68 (2006). Rather, a "tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). "A tangible employment action in most cases inflicts direct economic harm." *Id.* at 762.

18

Plaintiff generally alleges that she suffered retaliation in the workplace when, after she filed a grievance and EEOC charge, her work was "scrutinized, second-guessed, and micro-managed" by her superiors, and she was deprived of her "decision making authority." (Compl. ¶¶ 153, 157)  As examples, Plaintiff alleges: that she was denied the use of a transcriptionist (*id.* ¶ 86); that she was not allowed to file certain petitions for appellate review (*id.* ¶ 90); that her supervisor traveled with her to a court hearing and participated in the hearing in unwelcome ways (*id.* ¶ 94); that her case assignments were less favorable than others (*id.* ¶ 106); that her accomplishments were not recognized in the Department internal newsletters as were those of other employees (*id.* ¶ 108); and that she received a performance review that did not qualify her for the possibility of a merit-based payment (*id.* ¶ 129-33). According to Plaintiff, these events created the "implicit message" that Plaintiff "was "inferior" to other attorneys due to her race, gender, and age.  (*Id.* ¶ 135).

Even if they were true, none of these alleged actions constitutes an adverse employment action sufficient to state a Title VII retaliation claim.  Plaintiff does not allege any demotion, reassignment, change in compensation or benefits, or any other tangible change in her employment status.  Rather, Plaintiff complains of "petty slights" from her supervisors that are not actionable under Title VII.  *Burlington N.*, 548 U.S. at 68; *see also James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 376 (4th Cir. 2004) ("The mere fact that a new job assignment is less appealing to the employee . . . does not constitute adverse employment action); *Sanders v. Bernhardt*, 2020 U.S. Dist. LEXIS 201557, *10 (E.D. Va. Oct. 28, 2020) ("Title VII does not allow for a cause

of action based on an employee being subject to additional scrutiny."); *Bess v. Cty. of Cumberland*, 2012 U.S. Dist. LEXIS 152112, *30 (E.D.N.C. Oct. 23, 2012) (recognizing that assignment to "less desirable tasks" does not amount to an adverse employment action); *Galman v. Sysco Food Servs. of Metro N.Y. LLC*, 674 Fed. Appx. 211, 214 (3rd Cir. 2016) (lack of recognition in a company newsletter is not an adverse employment action).

Similarly, Plaintiff's 2020-21 performance review, which she alleges scored her as having "met [her employer's] expectations" and did not result in eligibility for merit-based pay, does not rise to the level of an adverse employment action. Disappointing performance evaluations "occur with frequency in the workplace" and do not qualify as an adverse employment action. *See Flanigan v. Fayetteville State Univ.*, 2016 U.S. Dist. LEXIS 6015, *10-11 (E.D.N.C. Jan. 19, 2016). Even a "downgrade" in a performance evaluation does not constitute an adverse employment action unless "the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment." *James*, 368 F.3d at 377 (quotation omitted). There is no such allegation here. Plaintiff alleges only that her performance evaluation did not qualify her for merit-based pay. But, as a matter of law, the non-receipt of a discretionary bonus following a performance evaluation does not constitute an adverse employment action. *See Smith v. Va. Hous. Dev. Auth.*, 437 F. Supp. 3d 486, 510 (E.D. Va. 2020) (refusal to award a "merit increase in pay or a bonus" following a performance review "is not an adverse employment action"); *Schamann v. O'Keefe*, 314 F. Supp. 2d 515, 531 (D. Md.

20

2004) ("As a matter of law, the non-receipt of a discretionary bonus does not constitute an adverse employment action").

Thus, because Plaintiff has not alleged any adverse employment action following the submission of her internal grievance and EEOC charge, her retaliation claim under Title VII fails as a matter of law.

B.    Plaintiff Failed to Exhaust Administrative Remedies.

Plaintiff's Title VII retaliation claim fails for the independent reason that she failed to exhaust administrative remedies with respect to this claim.

"Before filing suit under Title VII, a plaintiff must exhaust administrative remedies by bringing a charge with the EEOC." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000). That charge "defines the scope of her subsequent right to institute a civil suit." *Id.* In other words, the only claims that may be brought under Title VII are those "reasonably related to her EEOC charge [or that] can be expected to follow from a reasonable administrative investigation." *Id.* at 247-48. So, "[w]hen the retaliation occurs after the plaintiff files her EEOC charge, the retaliation grows out of the discrimination allegation and the plaintiff may raise her claim of retaliation for the first time in district court." *Triplett v. N.C. Dept. of Public Safety*, 2017 U.S. Dist. LEXIS 4086, at *11 (W.D.N.C. Jan. 10, 2017) (citing *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992). In contrast, "if the alleged retaliation occurred prior to a plaintiff filing an EEOC charge, plaintiff must include an allegation of retaliation in her EEOC charge to satisfy the exhaustion requirement." *Id.* at *12 (collecting cases).

21

Here, Plaintiff's EEOC charge, filed on 20 October 2020, did not allege retaliatory discrimination. (*See* Exhibit A (EEOC Charge)) Consequently, Plaintiff's Title VII retaliation claim in this action is barred for failure to exhaust administrative remedies unless it concerns events occurring *after* 20 October 2020 in response to the EEOC filing. It does not. Instead, Plaintiff's retaliation claim impermissibly relies on alleged conduct that began *before* she filed her EEOC filing in October 2020. Specifically, Plaintiff alleges that the efforts to "sabotage" her began in July 2020 after she filed her internal grievance. (*See* Compl ¶¶ 91-92, 94 (alleging events in July 2020); *id.* ¶¶ 96, 99 (alleging events in August 2020))

Further, any conduct that is alleged to have occurred after she filed her EEOC charge is not alleged to be the result of her EEOC charge, and cannot plausibly be construed to have been. *(See generally id.* ¶¶ 126–32) Rather, that conduct is expressly alleged to be a continuation of earlier actions. For example, Plaintiff alleges that, in January 2021, she "again" was told not to speak with parties in companion cases, a repeat of an earlier message from before her grievance hearing. (*Id.* ¶¶ 107, 126) She similarly alleges that she was not recognized in NCDOJ publications, a practice that she alleges she "began to notice" before filing her EEOC charge. (*Id.* ¶¶ 108, 128)

In summary, Plaintiff alleges a pattern of conduct to "sabotage" her career, but she also alleges that she identified that conduct before she filed her EEOC charge. Plaintiff did not allege retaliatory conduct in her EEOC charge, however.

22

Accordingly, her present claim for Title VII retaliation must be dismissed for failure to exhaust administrative remedies.

## V. PLAINTIFF FAILS TO STATE A CLAIM FOR HOSTILE WORK ENVIRONMENT.

In Counts Three and Four, Plaintiff states that the alleged retaliatory actions following her internal grievance and EEOC charge "created a hostile work environment for Plaintiff." (Compl. ¶¶ 153, 157) To the extent Plaintiff seeks to assert an independent claim for a hostile work environment, she has failed to allege facts to state a plausible claim and therefore any "hostile work environment" claims should be dismissed.

To state a hostile work environment claim under Title VII or Section 1983, a plaintiff must allege that: "(1) she experienced unwelcome harassment; (2) the harassment was based on her gender, race, or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive atmosphere, and (4) there is some basis for imposing liability on the employer." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003); *see also Beardsley v. Webb*, 30 F.3d 524, 529 (4th Cir. 1994) (The elements of a hostile work environment claim arising from alleged discrimination are the same under Title VII and Section 1983); *Alexander v. City of Greensboro*, 762 F. Supp. 2d 764, 792 (M.D.N.C. 2011) (same). Here, as a matter of law, Plaintiff fails to state facts sufficient to constitute a hostile work environment. Plaintiff also does not allege harassment based on her gender, race, or age.

23

First, a district court may find as a matter of law that "allegations taken as true pursuant to Rule 12(b)(6) do not rise to the level of severe or pervasive conduct." *Coppage v. City of Raleigh*, 2021 U.S. Dist. LEXIS 64775, *17 (E.D.N.C. Apr. 1, 2021) (citing *Bonds, v. Leavitt*, 629 F.3d 369, 385 (4th Cir. 2011); *see also Bass*, 324 F.3d at 765. That is the appropriate result here. Plaintiff generally alleges that she did not receive a promotion (Compl. ¶ 79) and, as discussed above, that her work was "scrutinized, second-guessed, and micro-managed" by her superiors. (*Id.* ¶¶ 153, 157)

Relevant considerations for determining whether the "severe or pervasive" standard is met include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 184 (4th Cir. 2001) (quoted case omitted). Even when viewed in the light most favorable to Plaintiff, her allegations fall far short of the "type of severe or pervasive gender, race, or age based activity necessary to state a hostile work environment claim." *Bass*, F.3d at 765. Indeed, courts routinely have held that operational actions such as "abrupt shifts in workload, reassignments, negative reviews, a supervisor's rejection of [plaintiff's] work product, [and] mandatory meetings" are not "sufficiently severe or pervasive" to establish a hostile work environment claim. *Buckner v. Lew*, 2014 U.S. Dist. LEXIS 36798, *20 (E.D.N.C. Mar. 20, 2014); *see also Perkins v. Int'l Paper Co.*, 936 F.3d 196, 209 (4th Cir. 2019) (disparate treatment with regard to benefits, work assignments, and the enforcement of workplace rules does not qualify as a hostile work environment);

*Coppage*, 2021 U.S. Dist. LEXIS 64775, *18-19 (repeated denials of a promotion is not so "severe" as to qualify as a hostile work environment); *Flanigan*, 2016 U.S. Dist. At *8 ("A dip on a single performance evaluation . . . is not meaningful, and alone is insufficient to satisfy plaintiff's pleading burden.").

Second, Plaintiff does not plausibly allege that any of the undesired work conditions was imposed because of her gender, race, or age. Instead, Plaintiff specifically alleges that the actions occurred "as a result of her opposition to the discrimination by Defendants" through her grievance and EEOC filings. (Compl. ¶¶ 152-53) Consequently, Plaintiff fails to allege the second required element of a hostile work environment claim: that the alleged harassment was based on her gender, race, or age. *Bass*, 324 F.3d at 765.

In short, Plaintiff has not alleged facts sufficient to either demonstrate (1) unwelcome treatment sufficiently severe and pervasive to alter the conditions of her employment through an abusive atmosphere or (2) that any alleged harassment was based on her gender, race, or age. Accordingly, to the extent Plaintiff intended to assert an independent claim for a hostile work environment, the Court should dismiss it.

## VI. PLAINTIFF FAILS TO STATE A CLAIM FOR AGE DISCRIMINATION.

Plaintiff's Complaint contains citations to the Age Discrimination in Employment Act ("ADEA") (*id.* ¶¶ 2, 10, 13-14) and alleges discrimination based on Plaintiff's age (*id.* ¶¶ 13-14, 79-80, 135). But Plaintiff alleges that she is the same

age as the person who was promoted instead of her (*id.* ¶¶ 16, 69) and does not allege age-based discrimination in any of her four causes of action (*id.* ¶¶ 139-59).

To the extent Plaintiff purports to assert a claim for age discrimination, it should be dismissed. Plaintiff did not complain of age discrimination in her EEOC charge, and therefore any claim of age discrimination is barred. *See Bonds v. Leavitt*, 629 F.3d 369, 379 (4th Cir. 2011) (allegations in litigation "must correspond" to the EEOC charge and therefore a Title VII claim is barred when it alleges discrimination on a basis different than that alleged in the EEOC charge).

Alternatively, if Plaintiff maintains that she did not intend to allege a claim for age discrimination, pursuant to Fed. R. Civ. P. 12(f), all references in the Complaint to the ADEA and age discrimination are immaterial and should be struck.

## **CONCLUSION**

Defendants respectfully request that the Court grant their motion and dismiss all claims in this action, except Count One as to defendants Dismukes and Elder, and Count Two as to the North Carolina Department of Justice. Specifically, Defendants request that the Court: (i) dismiss Count One as against defendants Stein and Cassell; (ii) dismiss Count Two as against all individual defendants, (iii) dismiss Count Three and Count Four in their entirety; (iv) if not otherwise dismissed in their entirety, dismiss all "hostile work environment" claims incorporated into Counts Three and Four; and (v) dismiss any "age discrimination" claims or, in the alternative, strike all age discrimination allegations.

Respectfully submitted, this the 18th day of January, 2022.

MORNINGSTAR LAW GROUP

 /s/  Shannon R. Joseph
Shannon R. Joseph
N.C. State Bar No. 22144
sjoseph@morningstarlawgroup.com
Amie Flowers Carmack
N.C. State Bar No. 21970
acarmack@morningstarlawgroup.com
421 Fayetteville St., Suite 530
Raleigh, NC  27601
Telephone: (919) 590-0370
Facsimile:  (919) 882-8890

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing Defendants'
Memorandum of Law In Support of Their Motion to Dismiss and Alternative Motion
to Strike was this day served by filing the document electronically via the CM/ECF
system, which will send notification of such filing to the following participants:

Valerie L. Bateman
New South Law Firm
209 Lloyd Street, Ste. 350
Carrboro, NC  27510

Rachel M. Blunk
Forrest Firm, P.C.
125 S. Elm Street, Ste. 100
Greensboro, NC  27401

*Attorneys for the Plaintiff*

This the 18th day of January, 2022.


MORNINGSTAR LAW GROUP


   /s/  Shannon R. Joseph
Shannon R. Joseph

28