IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:21-CV-00371-BO

SONYA CALLOWAY-DURHAM,

      Plaintiff,

v.

N.C. DEPARTMENT OF JUSTICE,
JOSHUA H. STEIN, in his individual
and official capacity as Attorney
General, LESLIE COOLEY
DISMUKES, in her individual and
official capacity as Criminal Bureau
Chief, SHANNON CASSELL, in her
individual and official capacity as former
Civil Bureau Chief, and ALANA
DANIELLE MARQUIS ELDER, in her
individual and official capacity as Senior
Deputy Attorney General,

      Defendants.

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

# **INDEX**

TABLE OF AUTHORITIES............................................................................iv

INTRODUCTION....................................................................................1

NATURE OF THE CASE ........................................................................ 2

STATEMENT OF FACTS ........................................................................ 3

I.      THE NORTH CAROLINA DEPARTMENT OF JUSTICE ............................. 3

      A.  The Public Safety Section ............................................................. 3

      B.  Recent History and Leadership of the Public Safety Section ...................... 4

II.     The Hiring Process for the Public Safety Section Head ................................... 5

      A.  Job Posting and Applicants Selected for Interviews ................................. 5

      B.  Interviews of Applicants ............................................................... 7

      C.  Hiring Decision ........................................................................ 7

      D.  Plaintiff Filed a Grievance ........................................................... 8

III.    PLAINTIFF'S EMPLOYMENT EXPERIENCE ............................................. 10

      A.  Plaintiff's Employment History ..................................................... 10

      B.  Plaintiff's Relationship With Dismukes and Elder ................................. 11

ARGUMENT ........................................................................................ 12

I.      LEGAL STANDARD........................................................................... 12

II.     SUMMARY JUDGMENT IS WARRANTED ON PLAINTIFF'S TITLE VII CLAIM AGAINST NCDOJ ................................................................... 13

      A.  Plaintiff Lacks Evidence of Discrimination Under the Mixed-Motive Framework ............................................................................. 14

Case 5:21-cv-00371-BO   Document 98   Filed 04/19/24   Page 2 of 38

B.  Plaintiff Lacks Evidence of Discrimination
Under the *McDonnell-Douglas* Framework ............................... 16

1.  Plaintiff's prima facie case ..................................................... 17

2.  NCDOJ selected Trachtman for the position because
he was the most qualified candidate ..................................... 17

3.  There is no evidence of pretext .............................................. 20

a.  The circumstances suggest that no discrimination occurred ........ 21

b.  Plaintiff's argument that she was the superior candidate
is without evidentiary support ......................................... 22

III.  THE COURT SHOULD GRANT SUMMARY JUDGMENT ON
PLAINTIFF'S CLAIM AGAINST DISMUKES AND ELDER UNDER 42
U.S.C. § 1983 .............................................................................. 26

IV.  QUALIFIED IMMUNITY BARS PLAINTIFF'S CLAIMS AGAINST
DISMUKES AND ELDER ............................................................. 27

A.  Plaintiff has not Established a Violation of Federal Law ......................... 27

B.  Plaintiff Cannot Show that Dismukes or Elder Violated a Clearly
Established Right .................................................................. 28

CONCLUSION ............................................................................... 30

CERTIFICATE OF WORD COUNT ..................................................... 31

CERTIFICATE OF SERVICE .............................................................. 32

Case 5:21-cv-00371-BO   Document 98   Filed 04/19/24   Page 3 of 38

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Ferguson,*
   884 F.3d 219 (4th Cir. 2018)................................................................................. 29

*Allen v. Cooper,*
   895 F.3d 337 (4th Cir. 2018)................................................................................. 29

*Amirmokri v. Balt. Gas & Elec. Co.,*
   60 F.3d 1126 (4th Cir. 1995)................................................................................. 18

*Anderson v. Westinghouse Savannah River Co.,*
   406 F.3d 248 ((4th Cir. 2005) ............................................................................... 22

*Ashcroft v. al-Kidd,*
   563 U.S. 731 (2011)............................................................................................... 27

*Bd. of Educ.,*
   757 F.2d 1504 (4th Cir. 1985)............................................................................... 21

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986)............................................................................................... 12

*Cf. Alexander v. Marriott Int'l, Inc.,*
   2011 U.S. Dist. LEXIS 33329 (D. Md. Mar. 29, 2011).......................................... 25

*City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.,*
   538 U.S. 188 (2003)............................................................................................... 26

*DeJarnette v. Corning, Inc.,*
   133 F.3d 293 (4th Cir. 1998)................................................................................. 20

*Demesme v. Montgomery Cty. Gov't,*
   63 F. Supp. 2d 678 (D. Md. 1999)........................................................................ 21

*Dennis v. Columbia Colleton Med. Ctr., Inc.,*
   290 F.3d 639 (4th Cir. 2002)................................................................................. 20

*Desert Palace, Inc. v. Costa,*
   539 U.S. 90 (2003)................................................................................................. 14

*Diamond v. Colonial Life & Accident Ins. Co.,*
   416 F.3d 310 (4th Cir. 2005)...................................................................... 13, 14, 16

iv

*Evans v. Techs. Applications & Serv. Co.,*
    80 F.3d 954 (4th Cir. 1996) ........................................................................ 17, 18, 21

*Fuller v. Rex Hosp. Inc.,*
    2022 U.S. Dist. LEXIS 144958 (E.D.N.C. Aug. 15, 2022) ................................ 20, 25

*Hill v. Lockheed Martin Logistics Mgmt., Inc.,*
    354 F.3d 277 (4th Cir. 2004) ................................................................................ 13

*Holly v. N.C. Dep't of Admin.,*
    846 F. Supp. 2d 416 (E.D.N.C. 2012) .................................................................. 17

*Hux v. City of Newport News, Va.,*
    451 F.3d 311 (4th Cir. 2006) ................................................................................ 24

*Jackson-Heard v. Elizabeth City State Univ.,*
    2013 U.S. Dist. LEXIS 131234 (E.D.N.C. Sept. 12, 2013) .................................... 14

*James v. Se. Grocers, LLC,*
    2020 U.S. Dist. LEXIS 269060 (D.S.C. Dec. 4, 2020) ................................................ 14

*Jenkins v. Medford,*
    119 F.3d 1156 (4th Cir. 1997) .............................................................................. 26

*Laing v. Fed. Ex. Corp.,*
    703 F.3d 713 (4th Cir. 2013) ...................................................................... 14, 16, 20

*Libertarian Party of Va. v. Judd,*
    718 F.3d 308 (4th Cir. 2013) ................................................................................ 13

*Locklear v. Sealey,*
    2012 U.S. Dist. LEXIS 71021 (E.D.N.C. May 22, 2012) ........................................ 22

*Love v. Alamance Bd. Of Educ.,*
    757 F.2d 1504 (4th Cir. 1985) .............................................................................. 21

*Love-Lane v. Martin,*
    355 F.3d 766 (4th Cir. 2004) ................................................................................ 27

*Martin v. Alumax of S.C., Inc.,*
    380 F. Supp. 2d 723 (D.S.C. 2005) ...................................................................... 21

*Matias v. Elon Univ.,*
    2018 U.S. Dist. LEXIS 199157 (M.D.N.C. Nov. 26, 2018) .................................... 15

v

*Matsushita Elec. Indus. v. Zenith Radio Corp.,*
  475 U.S. 574 (1986) ................................................................................. 13

*McDonnell Douglas Corp. v. Green,*
  411 U.S. 792 (1973) ................................................................................. 13

*Mims v. TVA Bd. of Dirs.,*
  2015 U.S. Dist. LEXIS 141972 (N.D. Ala. Sep. 23, 2015) ..................... 25

*Oncale v. Sundowner Offshore Servs., Inc.,*
  523 U.S. 75 (1998) ................................................................................... 16

*Rogers v. Pendleton,*
  249 F.3d 279 (4th Cir. 2001) ................................................................... 25

*Samuels v. City of Baltimore,*
  2009 U.S. Dist. LEXIS 96228 (D. Md. Oct. 15, 2009) ............................ 15

*Simmons v. City of Southport,*
  2024 U.S. Dist. LEXIS 9731 (E.D.N.C. Jan. 18, 2024) ........................... 27

*St. Mary's Honor Ctr. v. Hicks.,*
  509 U.S. 502 (1993) ................................................................................. 16

*Thompson v. Potomac Elec. Power Co.,*
  312 F.3d 645 (4th Cir. 2002) ................................................................... 13

*Warch v. Ohio Cas. Ins. Co.,*
  435 F.3d 510 (4th Cir. 2006) ................................................................... 14

*White v. White,*
  2021 U.S. Dist. LEXIS 233594 (E.D.N.C. Dec. 6, 2021) ........................ 20

## Statutes and Other Authorities

Fed. R. Civ. P. 56 ......................................................................................... 1, 12

42 U.S.C.§ 1983 ........................................................................................... 26, 27

42 U.S.C.§ 2000 ............................................................................................... 13

Case 5:21-cv-00371-BO   Document 98   Filed 04/19/24   Page 6 of 38

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:21-CV-00371-BO

SONYA CALLOWAY-DURHAM,

      Plaintiff,

v.

N.C. DEPARTMENT OF JUSTICE,
JOSHUA H. STEIN, in his individual
and official capacity as Attorney
General, LESLIE COOLEY
DISMUKES, in her individual and
official capacity as Criminal Bureau
Chief, SHANNON CASSELL, in her
individual and official capacity as former
Civil Bureau Chief, and ALANA
DANIELLE MARQUIS ELDER, in her
individual and official capacity as Senior
Deputy Attorney General,

      Defendants.

**DEFENDANTS' MEMORANDUM
OF LAW IN SUPPORT OF THEIR
MOTION FOR SUMMARY
JUDGMENT**

      Pursuant to Local Civil Rule 7.1(e), defendants North Carolina Department of

Justice ("NCDOJ"), Leslie Cooley Dismukes, and Alana Danielle Marquis Elder, by

and through their undersigned counsel, submit this memorandum of law in support

of their motion for summary judgment pursuant to Rule 56 of the Federal Rules of

Civil Procedure.

## INTRODUCTION

      Plaintiff, a Black woman, is an NCDOJ attorney. In 2018, she began working

in NCDOJ's Public Safety Section. In 2019, Tammera Hill, a Black woman, became

the head of the Public Safety Section. In May 2020, Hill decided to leave NCDOJ to

███████████████████████████████████████████████. Hill's departure would leave the section head position vacant.

Plaintiff and 17 others applied for the open position of Public Safety Section Head. NCDOJ selected a white male applicant for the position. Before investigating the successful applicant's qualifications or the basis for NCDOJ's decision, Plaintiff concluded that she was the victim of race, color, and sex discrimination.

There was no discrimination. An all-female interview panel determined that the successful applicant was the most qualified for the position based on his ████ ████████████████████████████████████████████████████ ████████████████████████████████████████ Hill, the departing section head, had recommended the successful applicant.

Plaintiff has not developed any evidence that shows discrimination. Accordingly, Defendants respectfully request that the Court grant summary judgment and dismiss this action with prejudice.

## NATURE OF THE CASE

Plaintiff Sonya Calloway-Durham brought this lawsuit against NCDOJ, Attorney General Josh Stein, and three NCDOJ attorneys. (DE 1) Plaintiff filed her Complaint on 15 September 2021 and her Amended Complaint on 4 March 2022. (DE 1, 40) Plaintiff's Amended Complaint asserted four counts: two focused on Plaintiff's assertion that her non-promotion in June 2020 to head of the NCDOJ Public Safety Section was the product of discrimination; and two focused on claimed retaliation and hostile work environment.

On 29 August 2022, the Court dismissed all claims and defendants except the non-promotion claims against NCDOJ and two NCDOJ attorneys (Dismukes and Elder). (DE 50 at 11) Plaintiff's remaining claims are a Title VII claim against NCDOJ and a Section 1983 claim against Dismukes and Elder. Both claims assert that Plaintiff was not promoted in June 2020 due to her race, color, or sex. (DE 50 at 11; DE 40 ¶ 142-55 (Counts One and Two))

Defendants now move for summary judgment on the remaining claims.

## STATEMENT OF FACTS

I. THE NORTH CAROLINA DEPARTMENT OF JUSTICE

The North Carolina Department of Justice is comprised of multiple divisions that work together to support law enforcement, prevent crime, protect consumers, and to defend the State, its people, and their constitutional rights. (Defs. Stmn. Undisputed Facts ("DSUF") ¶ 1) One NCDOJ function is to provide legal representation to State agencies, officers, and employees in litigation arising from their official duties. (*Id.*)

The legal services provided by NCDOJ are divided into two bureaus: (1) the Civil Bureau, and (2) the Criminal Bureau. (DSUF ¶ 2) In 2020, when the promotion at issue occurred, the Criminal Bureau was divided into three sections, one of which was the Public Safety Section. (DSUF ¶ 6)

A. The Public Safety Section

The lawyers in the Public Safety Section provide legal services to the North Carolina Department of Public Safety ("DPS") on various matters. (DSUF ¶ 8) In 2020, the time of the promotion challenged in this lawsuit, the Public Safety Section

provided legal services in cases involving the Highway Patrol, Alcohol Law Enforcement, the State Bureau of Investigation, Emergency Management, Juvenile Justice, and Adult Corrections, among others. (*Id.*)

The vast majority of the Public Safety Section caseload involves lawsuits filed by incarcerated persons in federal court. (DSUF ¶ 9) The section also handles other matters like public records requests, personnel matters, Parole Commission cases, Occupational Safety and Health Administration cases, inverse condemnation, and other matters. (*Id.*) Another smaller portion of the caseload of the Public Safety Section includes claims by persons convicted of sex offenses whose sentences require their locations to be monitored ("satellite-based monitoring" or "SBM"). (*Id.*) The SBM challenges are typically brought and litigated in state court. (*Id.*)

B. <u>Recent History and Leadership of the Public Safety Section</u>

Each Criminal Bureau section is led by a Section Head who reports to the Senior Deputy Attorney General over that section. (DSUF ¶ 2) Since March 2018, defendant Elder has been the Senior Deputy Attorney General of the Criminal Division above the Public Safety Section. (DSUF ¶ 7) Elder reports to the Criminal Bureau Chief. (*Id.*) Defendant Dismukes has been the Criminal Bureau Chief since December 2017. (DSUF ¶ 3)

In 2018, when Plaintiff transferred to the Public Safety Section, Joe Finarelli was the Public Safety Section Head. (DSUF ¶¶ 21, 26) Finarelli is a white male. (DSUF ¶ 26)

In 2019, ████████████████ Finarelli to the Services to State Agencies Section in the Civil Bureau. (DSUF ¶ 27) ██████████ was responsible for choosing the next

Public Safety Section Head. (DSUF ¶ 28) ███████████ Tammera Hill, a Black woman, to serve as the Public Safety Section Head. (*Id.*) At that time, Hill was working as the Section Head for the Law Enforcement Liaison Section. (*Id.*) Hill had worked in the Public Safety Section before ████████████ Hill to be the Law Enforcement Liaison Section Head. (DSUF ¶ 25) Hill became the Public Safety Section Head in May 2019. (DSUF ¶ 28)

In May 2020, Hill notified Dismukes and Elder that she had ████████████ ████████████ that would begin at the end of June. (DSUF ¶ 30) Dismukes and Elder were disappointed that Hill had decided to leave NCDOJ. (DSUF ¶ 31) Dismukes and Elder thought favorably of Hill. (*Id.*) They viewed her departure as a loss to the Public Safety Section. (*Id.*)

Hill's decision to leave NCDOJ created the job vacancy that is the subject of this lawsuit.

II.    The Hiring Process for the Public Safety Section Head

NCDOJ promptly posted the vacancy so that a new Public Safety Section Head could be selected before Hill departed. (DSUF ¶ 34)

A.    Job posting and Applicants Selected for Interviews

On 27 May 2020, NCDOJ posted the vacancy for the section head position (Attorney Manager II). (DSUF ¶ 35) The posting requested that interested candidates submit their applications by 5 June 2020. (*Id.*) The job posting stated:

> The primary purpose of this position is to supervise the members of the section who represent the North Carolina Department of Public Safety in litigation and to independently handle litigation for that client agency in administrative courts and state and federal trial and appellate courts.

5

This includes assignment and monitoring of cases and duties of the attorney and support staff in the Section, representing the Department of Public Safety in litigation in the state and federal trial and appellate courts, and providing advice to that client agency.

(DSUF ¶ 36)  The posting further described the supervisory aspects of the position by noting that, in addition to having extensive knowledge of applicable laws, the candidate should have "[c]ommand of and experience in applying collaborative methods in an active team litigation and operational environment," as well as "[k]nowledge of effective management principals and the ability to use them." (DSUF ¶ 37)

NCDOJ Human Resources ("HR") forwarded eighteen applications to the interview panel to determine which applicants NCDOJ would interview.  (DSUF ¶ 40)  The interview panel was comprised of three people:  Dismukes, Elder, and Tina Wong, an HR employee.  (DSUF ¶ 38)  They chose to interview six applicants.  (DSUF ¶ 41)  Four applicants ███████████████████████████████████████ ████████████████████████████████████████; two applicants ██████████████ ███████. (*Id.*)

Dismukes sought Hill's input on the hiring decision at two points.  First, when Hill communicated her decision to leave NCDOJ during a videoconference with Elder and Dismukes, Dismukes asked whether any ████████████████ would be a good choice as the next section head.  (DSUF ¶ 32)  In response, ████████████████████ ████████████████████████████. (*Id.*)  Second, Dismukes asked Hill to review some of the applications for the position and provide her views before NCDOJ

conducted any interviews. (DSUF ¶ 39) Hill did. She did not change her recommendation. (*Id.*)

B.    Interviews of Applicants

On 9 June 2020, Elder, Dismukes, and Wong interviewed six applicants. (DSUF ¶ 42) They conducted the interviews by videoconference because of COVID pandemic restrictions. (DSUF ¶ 42) They used a common set of questions for every interview. (DSUF ¶ 43) They each took notes during the interviews. (*Id.*)

C.    Hiring Decision

After the interviews, the interview panel discussed the applicants to determine who was the most qualified candidate. (DSUF ¶ 57) The panel concluded that Trachtman was the most qualified candidate for multiple reasons. (DSUF ¶ 59) Elder prepared a recommendation memorandum that summarized the hiring process and the qualifications that made Trachtman the most qualified of the applicants. (DSUF ¶ 60)



First, ███████████████████████. (DSUF ¶ 61) █████

████████████████████████████████████████

████████████████████████████████████████

███████ (*Id.*) ██████████████████████████

███████████████. (*Id.*) ██████████████████

██████████████████████████████ (*Id.*)

Second, ██████████████████████████████████

██. (DSUF ¶ 62) █████████████████████████████



██████████████ ██████████████. (*Id.*) ████████████████████

████████████████████████ ████████. (*Id.*)

Third, ████████ ████████ ███████ ███████ ████ ██ ████████ ██

████████████████████ (DSUF ¶ 63) ████████████████

████████████████████████████████████. (*Id.*)

Fourth, █████████████████████████████████████

████████████ (DSUF ¶ 64) The interview panel recognized ████████

████████████████████████████████████████

██████████████████████. (*Id.*)

On 15 June 2020, Dismukes sent the panel's recommendation that NCDOJ hire Trachtman for the open Public Safety Section head position to Alec Peters, Chief Deputy Attorney General. (DSUF ¶ 65) Peters approved the recommendation. (*Id.*) NCDOJ offered the position to Trachtman, and he accepted. (*Id.*)

The interview panel █████████████████████████████ (DSUF ¶ 66)

D. <u>Plaintiff Filed a Grievance.</u>

Plaintiff is a Black female. (DE 40 ¶ 19) Trachtman is a white male. (DSUF ¶ 32)

8

Plaintiff was notified that she had not been selected for the position on 17 June 2020. (DSUF ¶ 67) On 29 June 2020, Plaintiff filed an internal grievance which alleged that she was not promoted due to her race, color, and sex. (DSUF ¶ 68) When Plaintiff filed the grievance, she did not know all of Trachtman's qualifications and did not know what he said during his interview. (DSUF ¶ 69)

Plaintiff's internal grievance triggered a two-step review process. (DSUF ¶ 72) The first step was a mediation on 10 September 2020, which did not resolve the matter. (DSUF ¶ 73) The next step was an evidentiary hearing on 26 October 2020 before a neutral hearing officer, an ███████████████████████████████ ██████████████████████. (DSUF ¶ 74) Based on the evidence presented, the hearing officer determined that Plaintiff's claim that the hiring decision was discriminatory was ██████████ (DSUF ¶ 77) Consequently, the hearing officer recommended that "████████████████████████████████████████████████████ █████████." (*Id.*)

By letter dated 6 November 2020, Seth Dearmin, Chief of Staff, ███████ ████████████████████████████████████████████████████ ███████████ (DSUF ¶ 78)

On 20 October 2020, during the internal grievance process, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). (DSUF ¶ 79) In the EEOC charge, Plaintiff alleged that she was discriminated against based on her race, color, age, and sex.[1] (DSUF ¶ 80) The EEOC

[1] Plaintiff does not claim age discrimination in this lawsuit. (App. Ex. 4 180:14-20)

completed its investigation and issued a notice of right to sue on 17 June 2021. (DSUF ¶ 81)

II.    PLAINTIFF'S EMPLOYMENT EXPERIENCE

    A.    Plaintiff's Employment History

Plaintiff graduated from law school in 1995.  (DSUF ¶ 11)  She practiced as a solo practitioner for approximately six years.  (DSUF ¶ 12)

In 2001, Plaintiff ████████████████Attorney II position in NCDOJ's Labor Section.  (DSUF ¶ 13)  The Labor Section generally is responsible for civil, not criminal, cases.  NCDOJ selected Plaintiff for the position, which she began in January 2002.  (DSUF ¶ 15)  Roughly three years later, in February 2005, NCDOJ promoted Plaintiff to Attorney III.  (DSUF ¶ 16)

In 2011, Plaintiff ████  ██  ██Attorney IV position in the Capital Litigation/Federal Habeas Section.  (Id.)  The Capital Litigation/Federal Habeas Section works on criminal matters.  (DSUF ¶ 18)  Elder was the section head of Capital Litigation/Federal Habeas Section in 2011.  (DSUF ¶ 19)  ███████████ Plaintiff for the promotion to the Attorney IV position.  (Id.)  Elder became Plaintiff's direct supervisor.  (Id.)

In April 2018, ████████████████████████████ ████████████  (DSUF ¶ 20)  Plaintiff agreed to the transfer and began working as an Attorney IV in the Public Safety section in April 2018.  (DSUF ¶ 21) Plaintiff generally worked on satellite-based monitoring cases, Parole Commission cases, and OSHA cases.  (DSUF ¶ 22)

Plaintiff has stated that ████████████████████████████████
██████████████████████████████████████. (DSUF ¶ 23)  The
██████████████████████████████████████. (*Id.*)  When she
joined the Public Safety Section, Plaintiff ████████████████████
████████████████       (DSUF ¶ 24)  She has described herself as a ██████████████
████████████████████████. (DSUF ¶ 84(c))

B.    <u>Plaintiff's Relationship With Dismukes and Elder</u>

Plaintiff testified that she initially "got along" with Elder after Elder promoted Plaintiff, but their relationship became strained. (App.[2] Ex. 4 25:18-26:22)  Plaintiff traces this tension to multiple events.   All but one of these events occurred during her work in the Capital Litigation/Federal Habeas Section between 2011 and 2018, before Plaintiff began working in the Public Safety Section.  (*See, e.g.*, App Ex. 4 40:22-47:15)

Plaintiff's central disagreement with Elder occurred in 2018.  (App. Ex. 4 36:2-8) ████████████████ suffered a heart attack ████████, and Plaintiff helped the ████████ call ████████ instead of an ambulance.  (App. Ex. 4 39:22-43:25, 47:13-15)  Plaintiff and Elder disagreed about the handling of the incident.  (*Id.*) Plaintiff felt that Elder did not express appropriate concern about ████████ but

_____

[2] "App." refers to the Local Civil Rule 56.1 Appendix submitted with Defendants' Statement of Undisputed Facts.

instead, according to Plaintiff, focused on Plaintiff's conduct.[3] (App. Ex. 4 44:3-24) Plaintiff has stated that this event "totally ruined [their] working relationship." (App. Ex. 4 46:10-15)

Plaintiff also has recounted various frustrations with Dismukes that occurred before she applied to be the head of the Public Safety Section. She believes that Dismukes did not accurately describe the position in the Public Safety Section when she approached Plaintiff about transferring to the section in 2018. (App. Ex. 4 182:7-13) Plaintiff contends that Dismukes refused to approve resources that Plaintiff needed to succeed, like paying for transcripts or funds for CLE. (App. Ex. 4 182:7-21, 185:8-11) Plaintiff also contends that Dismukes did not allow Plaintiff to keep certain cases that she wanted to retain after transferring to the Public Safety Section. (App. Ex. 4 238:18-22)

## **ARGUMENT**

### I.   LEGAL STANDARD

Summary judgment is warranted when there is no genuine issue of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the movant meets that burden, the non-movant must then establish the specific material facts in

---

[3] Magistrate Judge Jones concluded that these events were too remote to bear on the issue of whether the challenged promotion decision in June 2020 was discriminatory. (DE 87 at 6 ("Nevertheless, the court finds that this topic seeks information outside the scope of discovery because the event at issue is too remote to arguably demonstrate pretext or causation for purposes of the non-promotion discrimination claim."))

dispute. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-movant cannot defeat summary judgment through speculation or conclusions. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party . . . and [a] fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (citations omitted).

II.  SUMMARY JUDGMENT IS WARRANTED ON PLAINTIFF'S TITLE VII CLAIM AGAINST NCDOJ.

Title VII prohibits an employer from taking adverse employment action against an employee because of the person's race, color, or sex.  42 U.S.C. § 2000e-2(a)(1).  A plaintiff may establish a Title VII violation in two ways.  *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005); *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (en banc), *abrogated in part on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009).

A plaintiff can establish a violation under the "mixed-motive framework" through direct or circumstantial evidence that illegal discrimination motivated an employer's adverse employment action.  *Diamond*, 416 F.3d at 318; 42 U.S.C. § 2000e-2(m).  Alternatively, in the absence of such evidence, a plaintiff can proceed under the *McDonnell Douglas* burden-shifting framework.  *Diamond*, 416 F.3d at 318; *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  Under either approach, the "ultimate question" in every Title VII employment discrimination case

is whether the plaintiff was the victim of intentional discrimination. *Laing v. Fed. Ex. Corp.*, 703 F.3d 713, 722-23 (4th Cir. 2013); *Diamond*, 416 F.3d at 318-19.

Whether Plaintiff's claim is evaluated under the mixed-motive framework or the *McDonnell Douglas* burden-shifting framework, as discussed below, the undisputed material facts show that NCDOJ is entitled to judgment on the Title VII claim as a matter of law.

A. Plaintiff Lacks Evidence of Discrimination Under the Mixed-Motive Framework.

To defeat summary judgment under the mixed-motive framework, Plaintiff must have evidence from which a reasonable jury could conclude that race, color, or sex was a motivating factor for the non-promotion. *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-101 (2003). That evidence must display a "discriminatory attitude" and have a causal relationship with the adverse employment action. *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006); *James v. Se. Grocers, LLC*, 2020 U.S. Dist. LEXIS 269060, at *21 (D.S.C. Dec. 4, 2020) (direct evidence is evidence that the "employer announced, admitted, or otherwise indicated that [race, color, or sex] was a determining factor" in the challenged action). "Plaintiff's personal belief of animus" alone is "insufficient circumstantial evidence of race or sex discrimination." *Jackson-Heard v. Elizabeth City State Univ.*, 2013 U.S. Dist. LEXIS 131234, at *6 (E.D.N.C. Sept. 12, 2013).

There is no direct or circumstantial evidence that Plaintiff's non-promotion was motivated by race, color, or sex. The interview panel consisted of Elder, Dismukes, and Wong, each of whom selected Trachtman for the position because they

found him to be the most qualified candidate. (DSUF ¶ 58; App. Ex. 1 ¶ 30; App. Ex. 2 ¶ 23; App Ex. 3 ¶ 12)  Race, color, or gender was not considered by any of them. (DSUF ¶ 58; App. Ex. 1 ¶ 37; App. Ex. 2 ¶ 27; App Ex. 3 ¶ 14)

Plaintiff testified that there were no statements by any member of the interview panel during the interview that reflected a discriminatory motivation. (App. Ex. 4 87:13-18)  Nothing about the interview process made Plaintiff feel that she was not promoted for discriminatory reasons.  (App. Ex. 4 88:6-15)  Plaintiff testified that she is not aware of any discriminatory conduct or statements by Elder or Wong.  (App. Ex. 4 180:21-181:9)

Plaintiff would not make the same admission as to Dismukes.  When asked to provide examples of discriminatory conduct, however, Plaintiff pointed to general workplace complaints that have no connection to race, color, or sex.  For instance, Plaintiff stated that Dismukes allegedly: (i) declined Plaintiff's request for the assistance of a transcriptionist (App. Ex. 4 185:8 – 187:21); (ii) did not carry through with certain case assignments Plaintiff requested (App. Ex. 4 192:3 – 193:13); and (iii) ██████████████████████████████████████████ (App. Ex. 4  193:20 – 194:6).

These race and gender-neutral actions are insufficient to establish race, color, or sex discrimination.  *See Matias v. Elon Univ.*, 2018 U.S. Dist. LEXIS 199157, at *9 (M.D.N.C. Nov. 26, 2018) (discussing race neutral statements); *Samuels v. City of Baltimore*, 2009 U.S. Dist. LEXIS 96228, at *15-16 (D. Md. Oct. 15, 2009) (discussing gender neutral statements and actions).  To the contrary, the alleged conduct falls

into the category of permitted conduct under Title VII, which is not intended to be "a general civility code" for the workplace. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998).

Thus, Plaintiff has not forecast evidence from which a reasonable jury could conclude that NCDOJ hired someone other than Plaintiff to be the Public Safety Section Head due to race, color, or sex.

B.    Plaintiff Lacks Evidence of Discrimination Under the *McDonnell-Douglas* Framework.

To defeat summary judgment under the *McDonnell-Douglas* framework, Plaintiff first must establish a prima facie case of discrimination. *Hill*, 354 F.3d at 285. If Plaintiff satisfies that initial burden, the "burden shifts to the [defendant] to articulate a nondiscriminatory reason for its action." *Laing*, 703 F.3d at 719; *Hill*, 354 F.3d at 285. Defendant's burden is one of production that involves "no credibility assessment." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993). If the defendant satisfies that burden, the "burden shifts back to the plaintiff to prove by a preponderance of the evidence that the [defendant's] stated reasons were not its true reasons, but were a pretext for discrimination." *Hill*, 354 F.3d at 285 (quotation omitted). At that point, the burden of establishing pretext "merges with the ultimate burden of persuading the court that the plaintiff has been the victim of intentional discrimination." *Id.* (cleaned up); *see also Diamond*, 416 F.3d at 318-19.

The undisputed material facts show that Plaintiff was not a victim of intentional discrimination. Even if Plaintiff has established a prima facie case, the undisputed material facts show that NCDOJ chose Trachtman for the position over

Plaintiff and the other applicants because he was the most qualified candidate. Accordingly, in the absence of evidence of pretext, summary judgment is properly entered in favor of NCDOJ.

       1.    *Plaintiff's prima facie case*

To establish a prima facie case for a discriminatory failure to promote, Plaintiff must show that "(1) she is a member of a protected class; (2) her employer had an open position for which she applied or sought to apply; (3) she was qualified for the position; and (4) she was rejected for the position under circumstances giving rise to an inference of discrimination." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959-60 (4th Cir. 1996). "One way for an African-American female to prove the fourth element is by showing that the employer rejected her application for promotion and filled the job with a Caucasian male." *Holly v. N.C. Dep't of Admin.*, 846 F. Supp. 2d 416, 428 (E.D.N.C. 2012).

NCDOJ recognizes that the elements required to establish a prima facie case in this context present a "relatively easy test." *Evans*, 80 F.3d at 960. Plaintiff is a member of a protected class, she applied for the position in question, she was qualified for that position, and NCDOJ selected a white male for the position.

As discussed below, Plaintiff's case ends there.

       2.    *NCDOJ selected Trachtman for the position because he was the most qualified candidate.*

NCDOJ selected Trachtman for the position for nondiscriminatory reasons: the interview panel determined that he was better qualified than Plaintiff (and the other applicants) for the position. The relative qualifications for a position are valid

reasons for a hiring or promotion decision. *Evans*, 80 F.3d at 960 ("Job performance and relative employee qualifications are widely recognized as valid, nondiscriminatory bases for any adverse employment decision."); *Amirmokri v. Balt. Gas & Elec. Co.*, 60 F.3d 1126, 1129 (4th Cir. 1995) ("An employer may rebut a plaintiff's prima facie case by demonstrating that the person promoted was better qualified for the position").

Here, the undisputed evidence shows that NCDOJ selected Trachtman based on qualifications that made him the better suited applicant for the position.

As an initial matter, the job description for the position specified a management preference for prior management experience and significant litigation experience in state, federal, and administrative courts. (App. Ex. 2-B at 1-2) In addition, the posting noted that the successful candidate would have to advise the client agency, represent the State in appeals, and promote collaborative methods. (*Id.*) When the interview panel recommended that Trachtman be offered the position, it noted four reasons for its recommendation in a memorandum prepared before Plaintiff raised any allegation of discrimination.



First, ██████ ████ █████ ██ ████ ████ ████ ███ ████████████████████████████████████████████████████████████ ██████████████." (DSUF ¶ 60; App. Ex. 2-G at 1) In addition, ██████ ████████████████████████████████████████████████████████." (DSUF ¶ 60; App. Ex. 2-G at 1) ████████████████████████

██████████████████████████████████████████████████████

████. (App. Ex. 2-G at 1)

    Second, █████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████.” (*Id.*) ██████████████████████████

██████████████████████████████████████████████████████.”

(App. Ex. 2-G at 2) ████████████████████████████████████

████████████████████.” (*Id.*)  The panel noted that "████████████████

██████████████████████████████████████████████████████

████████████████.” (*Id.*)

    Third, ████████████████████████████████████████

"█████████████████████████████████████████████████████

██████e.  (*Id.*) ██████████████████████████████████████

██████████████████████████.” (*Id.*)

    Fourth, █████████████████████████████████ ███████

████████████████████████████████████████ (*Id.*) The

panel recognized ██████████████████████████████████████

██████████████████. (*Id.*) The panel believed that ██████████ ███████

██████████████████████████████████████████████████████

████████████. (*Id.*)

In sum, based on ████████████████████████████ the panel recommended Trachtman for the position. (App. Ex. 2-G at 2) Thus, the evidence demonstrates a non-discriminatory reason for NCDOJ's decision.

> 3. *There is no evidence of pretext.*

Plaintiff cannot show by a preponderance of the evidence that NCDOJ's stated reason for selecting Trachtman–*i.e.*, that he was the most qualified candidate–was pretext for discriminatory animus.

When evaluating pretext, the court does not serve as a "super-personnel department weighing the prudence of employment decisions." *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998). It is not the court's function to assess whether the challenged decision "was wise, fair, or even correct, ultimately, so long as it truly was the reason for" the decision. *Laing*, 703 F.3d at 722.

Therefore, to defeat summary judgment, a plaintiff must show "that the reason advanced was a sham" under circumstances that could lead a reasonable person to conclude "that the true reason [for the employment decision] was an impermissible one under the law." *White v. White*, 2021 U.S. Dist. LEXIS 233594, at *14-15 (E.D.N.C. Dec. 6, 2021) (citations omitted), *aff'd*, 2023 U.S. App. LEXIS 4811 (4th Cir. 2023). One way for a plaintiff to establish pretext is "to show that her qualifications were so plainly superior that the employer could not have preferred another candidate." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 648 n.4 (4th Cir. 2002); *see also Fuller v. Rex Hosp. Inc.*, 2022 U.S. Dist. LEXIS 144958, at *9 (E.D.N.C. Aug. 15, 2022) (describing plaintiff's burden of showing that she was "discernibly better qualified").

Here, Plaintiff cannot establish pretext in NCDOJ's promotion decision.

      a.    *The circumstances suggest that no discrimination occurred.*

The panel that selected Trachtman for the position consisted of three women, which undercuts any claim of sex discrimination against Plaintiff. *Love v. Alamance Bd. of Educ.*, 757 F.2d 1504, 1509 (4th Cir. 1985); *Demesme v. Montgomery Cty. Gov't*, 63 F. Supp. 2d 678, 683 (D. Md. 1999) ("The fact that the decision makers were of the same protected class [as the plaintiff] suggests no discriminatory motivation."), *aff'd*, 208 F.3d 208 (4th Cir. 2000). Additionally, that one member of the panel (Elder) previously promoted Plaintiff creates an inference against coordinated race discrimination. *Evans*, 80 F.3d at 959 (when the decision-maker was the same person who previously hired the plaintiff, "there is a 'powerful inference' that the failure to promote her was not motivated by discriminatory animus").

Further, the position was available only due to the voluntary departure of Hill, a Black female, who had taken the position ███████████████████████████ ███████████████████████████ considered Hill to be an excellent section head. Both Dismukes and Elder were pleased with Hill's performance in that role and would have kept her in that position if not for her voluntary resignation. *See Martin v. Alumax of S.C., Inc.*, 380 F. Supp. 2d 723, 732 (D.S.C. 2005) (reviewing hiring history for the position at issue because "it is difficult to infer discrimination when the evidence shows persons within the protected class are regularly promoted").

Plaintiff does not dispute these facts and does not dispute Trachtman's qualifications. (App. Ex. 4 114:19-115:2) Notably, Plaintiff does not contend that

Hill's recommendation of Trachtman was based on race, color or sex. (App. Ex. 4 216:16-19) Rather, Plaintiff admits that Hill thought Trachtman would do a good job. (DSUF ¶ 33; App. Ex. 4 216:20-22) Plaintiff also acknowledged that it was appropriate for the panel to consider Hill's recommendation. (DSUF ¶ 57; App. Ex. 4 205:16-206:3)

>    b.    *Plaintiff's argument that she was the superior candidate is without evidentiary support.*

Plaintiff's claim of pretext appears to be premised entirely on her contention that she was more qualified than Trachtman for the position. Specifically, Plaintiff stresses that she had worked for NCDOJ for longer than Trachtman, that she worked within the Public Safety Section for longer than Trachtman, and that she held the position of Attorney IV at the time of the decision while Trachtman was an Attorney III. (App. Ex. 5 at 2) Those facts, even when viewed collectively, are insufficient to establish pretext.

As an initial matter, Plaintiff "cannot establish her own criteria for judging her qualifications for the promotion. She must compete for the promotion based on the qualifications established by her employer." *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 269 (4th Cir. 2005).

Moreover, "it is manifest that mere longevity in a given position is not, and in most cases should not be, the deciding factor when considering a promotion, especially where the promotion concerns a position with different duties requiring different knowledge and skill sets." *Locklear v. Sealey*, 2012 U.S. Dist. LEXIS 71021, at *20 (E.D.N.C. May 22, 2012) (rejecting plaintiff's contention that her longer tenure with

the employer made her equally or more qualified for promotions offered to less senior male attorneys). Rather, it is "entirely reasonable that an employer may favor a candidate's unique experience with the functions of a particular position more than simply the candidate who has been around the longest." *Id.* at \*21 (citing *Hall v. Forest River, Inc.,* 536 F.3d 615, 620 (7th Cir. 2008) ("Years of experience [ ] are not necessarily determinative of qualifications for a promotion.")).

Here, the interview panel correctly did not heavily weigh the length of each applicant's service and the applicant's employment classification. Focus on those criteria alone would not have served NCDOJ's objective to identify the most qualified candidate; and they automatically would have excluded applicants from the private sector. Instead, the interview panel focused on the criteria recited in the job posting, which stressed the importance of collaborative leadership skills together with the requisite litigation experience. The interview panel likewise determined that a "team builder would be ideal" for the position. (App. Ex. 1-B; App. Ex. 3-H)



████████ correctly led the panel to conclude that ████████████ ████████████ She admits that she is ████████████, (DSUF ¶ 52; App. Ex. 1 ¶ 28) ████████████. (App. Ex. 1 ¶ 27)



████████████████████████████████████████ (App. Ex. 1 ¶ 28; App. Ex. 2-C at

13)  Plaintiff admits that ███████████████████████████████ (App.

Ex. 4 254:14-21)  She has described herself as a "████████████████ (DSUF

¶ 83(c); App. Ex. 2-B at 7)

The interview panel did not have similar concerns regarding Trachtman.  He

███████████████████████████████████████████████████████.

Moreover, the interview panel believed that █████████████████████

███████████████████████.  Specifically, the interview panel ████████████

█████████████████████████████████████████████████████

█████████████████████.  (App. Ex. 2-G at 1-2)  The interview panel also gave

weight to the ████████████████████████████████████████████

███████████████████████████████████████████████

(App. Ex. 2-G at 2)

Plaintiff cannot reasonably challenge NCDOJ's decision to consider leadership

abilities when making its promotion decisions.  *See Hux v. City of Newport News, Va.*,

451 F.3d 311, 318 (4th Cir. 2006) ("It is not within our authority to dictate the factors

that employers must weigh in making a promotion, and we see nothing in Title VII

to indicate that Congress wished to require companies to disregard the successful

personal interactions that make for a productive workforce.").

However, even when the candidates are compared based solely on the length

of respective work experience, Plaintiff cannot show that she was so plainly superior

to Trachtman as to show pretext.

Plaintiff and Trachtman have practiced law since passing the Bar in the same year (App. Ex. 4 155:12-16). That Plaintiff now claims to have one more year of legal experience than Trachtman because she worked during her third year of law school under the third-year practice rule[4] (App. Ex. 4 155:12-16) "is of very little weight." *Mims v. TVA Bd. of Dirs.*, 2015 U.S. Dist. LEXIS 141972, at *15-16 (N.D. Ala. Sep. 23, 2015) (holding that a difference in one year of experience is not of sufficient "weight and significance" to show pretext). Similarly, that Plaintiff began working in the Public Safety Section roughly sixteen months before Trachtman (App. Ex. 5 at 2; App. Ex. 1-D at 1) is not so significant as to call into question the judgment of the interview panel. *See Fuller*, 2022 U.S. Dist. LEXIS 144958, at * 9 (E.D.N.C. Aug. 12, 2022) (where a plaintiff "asserts job qualifications that are similar or only slightly superior to those of the person eventually selected, the promotion decision remains vested in the sound business judgment of the employer.").

Plaintiff's classification as "Attorney IV" also did not indicate that she was more experienced and qualified than Trachtman. *Cf. Alexander v. Marriott Int'l, Inc.*, 2011 U.S. Dist. LEXIS 33329, at *11 (D. Md. Mar. 29, 2011) ("job content, not job title or classification" is instructive). Trachtman was ███████████████████ ██████. (App. Ex. 1 ¶ 12.) Indeed, when he joined the section, he acclimated quickly and handled a large volume of cases expeditiously. (App. Ex. 2-G at 1; App. Ex. 1 ¶ 13) Trachtman's federal court experience, where most of the Public Safety Section caseload lies, was deeper and stronger than Plaintiff's. Trachtman had practiced in

---

[4] Plaintiff did not include this information on her job application (DSUF ¶ 10).

federal court for the duration of his career and had completed a federal jury trial in the time that he had been with NCDOJ. (DSUF ¶ 50) In contrast, Plaintiff described ██████████████████████████████████████████████████ (App. Ex. 2-B at 5) and consistently ████████████████████████████████████████ ████████████████████████████████. (DSUF ¶¶ 83-87)

In short, Plaintiff cannot forecast any evidence of pretext. The Court should grant summary judgment and dismiss Plaintiff's Title VII claim.

III.  THE COURT SHOULD GRANT SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM AGAINST DISMUKES AND ELDER UNDER 42 U.S.C. § 1983.

A claim under 42 U.S.C. § 1983 requires a plaintiff to establish "(1) the deprivation of a right secured by the Constitution or a federal statute; (2) by a person; (3) acting under color of state law." *Jenkins v. Medford,* 119 F.3d 1156, 1159–60 (4th Cir. 1997). Plaintiff alleges that she suffered a violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution (DE 40 ¶ 146)

The Equal Protection Clause prevents government from denying persons within its jurisdiction "equal protection of the laws." U.S. Const. amend XIV. "[P]roof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 194 (2003) (quotation omitted). Courts may use the Title VII standards to evaluate whether a plaintiff has shown intentional conduct of the type required under 42 U.S.C. § 1983. *Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004); *see also*

*Simmons v. City of Southport*, 2024 U.S. Dist. LEXIS 9731, *9 (E.D.N.C. Jan. 18, 2024).

Plaintiff alleges that Elder and Dismukes violated the Equal Protection Clause because their reasoning that Trachtman was the most qualified candidate was pretextual, and that the real reason was discrimination. (DE 40 ¶¶ 142-49) This contention is the same argument that serves as the basis for her Title VII claim. (DE 40 ¶ 146)

It fails for the same reasons. Specifically, as addressed in Section II above, the undisputed material facts show an absence of race, color, and sex discrimination in the promotion decision.

Accordingly, the Court should grant summary judgment on Plaintiff's claim under 42 U.S.C. § 1983. *See Simmons*, 2024 U.S. Dist. LEXIS 9731, at *10-12 (granting summary judgment on 1983 claim for lack of evidence on Title VII standards).

IV.   QUALIFIED IMMUNITY BARS PLAINTIFF'S CLAIMS AGAINST DISMUKES AND ELDER.

Qualified immunity bars Plaintiff's claims against Dismukes and Elder because Plaintiff cannot show: (1) a violation of federal law; or (2) that the legal principle at issue was clearly established. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (stating the elements).

A.     Plaintiff has not Established a Violation of Federal Law.

As explained above, Plaintiff has not shown a violation of Title VII or the Equal
Protection Clause.  Specifically:

- Plaintiff has not shown that race, color, or sex was a motivating factor in the decision to select a white male applicant.  *See supra* II(A).

- Plaintiff has not produced evidence to show that NCDOJ's stated reason for selecting the successful candidate was pretextual.  *See supra* II(B)(3).

- Plaintiff has not produced evidence of any conduct by Dismukes or Elder that rises to the level of intentional discrimination.  *See supra* III.

Thus, Plaintiff cannot show a violation of Title VII or the Equal Protection Clause.

B.     Plaintiff Cannot Show that Dismukes or Elder Violated a Clearly
Established Right.

A legal principle is clearly established if, at the time of the defendant's
challenged conduct the principle is clear enough "that every reasonable official would
have understood that what he is doing violates" that principle.  *al-Kidd*, 563 U.S. at
741 (cleaned up and quotation omitted).  In other words, "qualified immunity affords
protection" to a government official "who takes an action that is not clearly
forbidden—even if the action is later deemed wrongful." *Rogers v. Pendleton*, 249 F.3d
279, 286 (4th Cir. 2001).

To determine if a principle is clearly established, the principle must be evaluated in "the specific context of the case," not at "a high level of generality." *Allen v. Cooper*, 895 F.3d 337, 356 (4th Cir. 2018), *aff'd*, 140 S. Ct. 994 (2020) (quoting *Adams v. Ferguson*, 884 F.3d 219, 226-27 (4th Cir. 2018)). Here, the specific legal question is:

- Was it clearly established, under the circumstances faced by Ms. Dismukes and Ms. Elder, that selecting the most qualified white male applicant violates the Equal Protection Clause?

The answer is no.

As discussed above, it is clearly established that selecting the most qualified candidate is not discriminatory. *See supra* II. Further, Plaintiff has not shown discrimination during the interview process. Instead, she supports her claim by pointing to race-neutral and sex-neutral statements that occurred outside the scope of the interview process. *See supra* III. This is insufficient.

Therefore, Dismukes and Elder's recommendation of the most qualified candidate is not clearly forbidden.

\*     \*     \*

In sum, Dismukes and Elder are entitled to qualified immunity. The claims against them should be dismissed.

**CONCLUSION**

Defendants respectfully request that the Court grant their motion for summary judgment and dismiss with prejudice all remaining claims.

Respectfully submitted, this the 19th day of April, 2024.

MORNINGSTAR LAW GROUP

_/s/ Shannon R. Joseph_
Shannon R. Joseph
N.C. State Bar No. 22144
sjoseph@morningstarlawgroup.com
Kenzie M. Rakes
N.C. State Bar No. 46349
krakes@morningstarlawgroup.com
J. William Graebe
N.C. State Bar No. 53480
wgraebe@morningstarlawgroup.com
421 Fayetteville St., Suite 530
Raleigh, NC 27601
Telephone: (919) 590-0370
Facsimile: (919) 882-8890

Jeffrey L. Roether
N.C. State Bar No. 48229
jroether@morningstarlawgroup.com
700 W. Main St.
Durham, NC 27701
Telephone: (919) 590-0368

*Attorneys for Defendants*

## CERTIFICATE OF WORD COUNT

The undersigned hereby certifies pursuant to Local Civil Rule 7.2(f)(3) that Defendants' Memorandum of Law in Support of their Motion for Summary Judgment contains 7184 words (excluding its captions, tables, signature blocks, this certificate, and the certificate of service), as reported by the word count feature of the software on which it was prepared.

This the 19th day of April, 2024.

MORNINGSTAR LAW GROUP

_/s/ Shannon R. Joseph_
*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing Defendants'
Memorandum of Law In Support of Their Motion for Summary Judgment was this
day served by filing the document electronically via the CM/ECF system, which will
send notification of such filing to the following participants:

Valerie L. Bateman
New South Law Firm
209 Lloyd Street, Ste. 350
Carrboro, NC  27510

June Allison
New South Law Firm
233 Laurel Avenue
Charlotte, NC  28207

*Attorneys for the Plaintiff*

This the 19th day of April, 2024.

MORNINGSTAR LAW GROUP

  */s/ Shannon R. Joseph*
*Attorneys for Defendants*